IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James Halloran, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1078 C.D. 2017 |
| | : | Argued: May 7, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY JUDGE WOJCIK                              FILED:  June 4, 2018

James Halloran (Claimant) petitions for review of the June 7, 2017 order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's decision and held that Claimant is ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

Claimant was employed as a bus driver for the Beaver County Transit Authority (Employer) from August 24, 2015, until November 7, 2016.  At the relevant time, Claimant was assigned to drive "route 3," which runs along Pennsylvania Route 65 (Route 65) from Beaver County into the City of Pittsburgh. The Pennsylvania Department of Transportation (PennDOT) closed Route 65 for

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), providing that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

construction, and, beginning on May 23, 2016, Employer directed route 3 drivers to follow a detour inbound to Pittsburgh. On October 24, 2016, and October 25, 2016, after a passenger advised Claimant that Route 65 was reopened, Claimant stopped following the inbound detour. Employer did not officially lift the detour until October 26, 2016.

Employer maintains a progressive discipline policy that requires a verbal warning, a written warning, a one-day suspension, and a two-day suspension prior to discharging an employee. Claimant had previously received a verbal warning and a written warning, as well as a one-day and two-day suspension. On November 7, 2016, Employer terminated Claimant's employment, citing an altercation that occurred on October 21, 2016, and his failure to follow the detour on October 24-25, 2016.[2]

The local job center determined that Claimant was not ineligible for benefits under Section 402(e) of the Law because, although Employer discharged Claimant for violating a work rule, it did not present sufficient information to show that Claimant was aware of or should have been aware of the work rule. Employer appealed, and the matter was assigned to a referee. At a January 26, 2017 hearing, Employer participated with counsel and Claimant proceeded *pro se*.

Beth Bennett, Employer's operations manager, testified that her responsibilities include supervising dispatch and all daily operations, including discipline and discharge. Notes of Testimony (N.T.) at 3. Bennett stated that Claimant was given a notice of termination on November 7, 2016, which stated that Claimant was discharged based on his failure to follow the posted detour on October

---

[2] Record Item 11, Employer Exhibit E-1, Disciplinary Notice dated November 7, 2016.

24, 2016, and October 25, 2016, and his involvement in an altercation with the dispatcher on October 21, 2016, which created a hostile work environment.

Bennett stated that she was sitting in dispatch on October 25th when Claimant came to the window and mentioned to dispatcher Joseph Honie that Route 65 was now open. Bennett testified that she, Honie, and another employee were discussing the need to get clarification. N.T. at 3.

Bennett said she learned of Claimant's failure to follow the posted detour when calls came in asking why drivers were taking different routes. She followed up on the calls by replaying GPS data and learned that, for two consecutive days, Claimant did not follow the detour but instead took Route 65 into Pittsburgh. She noted that the other drivers assigned to route 3 had followed the detour. Bennett testified that she conducted an investigative meeting on October 31, 2016, which was attended by Claimant, a union representative, and another employee. She said that Claimant acknowledged that he did not take the detour, explaining that passengers had told him Route 65 was open and that the dispatcher gave him permission to return to his regular route. More specifically, Claimant stated that he called dispatch, said he had learned that Route 65 was open, and the dispatcher responded, "That's what I hear." N.T. at 5.

Bennett testified that the detour for Claimant's route was still in effect and posted on October 24th and 25th. She explained that drivers are supposed to take the routes that are posted on dedicated boards at the entrance to Employer's facility. She said that the drivers rely on the boards as a communication tool that notifies them of detours due to construction and road closures. Bennett stated that, during orientation, she specifically points out to trainees the importance of reviewing the board "every single day when they come in." N.T. at 5. She said that if drivers

3

have questions or concerns, they go to dispatch for clarification. *Id.* Bennett noted that the public also is notified of detours, through posted notices, information on Employer's website, and tweets. N.T. at 6. She explained that, before lifting a detour, Employer has to make up new notices, take down the old ones, and post the new information for the public. *Id.* She added that Employer is required to report detours and routes to the state for calculation of "revenue miles." *Id.*

Bennett also testified that Employer's progressive discipline policy and rules of conduct are included in the bus operator handbook that Claimant received, and she reviewed Claimant's disciplinary record. She then related details about a verbal altercation between Claimant and a coworker on October 21, 2016, and stated that Claimant would have been discharged solely as a result of that incident.[3] N.T. at 10-13.

> In response to questions by Claimant, Bennett testified as follows:
>
> C  Did you talk to Joe (inaudible), and did he say that I…
>
> EW2  I did.
>
> C  … radioed him before I left Rochester asking if 65 was open?
>
> EW2  That is correct. You said, I hear 65 is open. And Joe said, that is what I hear. You did not ask permission, and Joe did not give you permission.
>
> C  I would assume …
>
> R  Do you have any other questions?

---

[3] Gary Bosetti, Employer's dispatcher, testified about an October 21, 2016 incident during which Claimant screamed at him and used profanity. N.T. at 19-24. Claimant admitted that he was involved in this incident and used expletives. N.T. at 25.

4

C Yeah. I would say wouldn't you assume that if you call dispatch and they say it's open that you would take the normal route?

EW2 No.

C No?

R Any other questions?

C No.

N.T. at 18.

During his testimony, Claimant admitted that he did not take the detour on October 24, 2016, and October 25, 2016, "because dispatch told me the route was open." N.T. at 25. Noting that PennDOT opened Route 65 on the 21st, Claimant added that, "everyone knew that 65 was open *except for [Employer's] management*. And I called dispatch and told him it was open, so I just naturally assumed I'll just take the regular route in." N.T. at 26 (emphasis added). Claimant also acknowledged that he was in a verbal dispute with Gary Bosetti on October 21, 2016, and used expletives throughout that conversation. N.T. at 25.

The referee credited the testimony of Employer's witnesses, reversed the job center's determination, and held that Claimant was ineligible for benefits under Section 402(e) of the Law. Claimant appealed to the Board, which affirmed. The Board's decision included the following findings of fact:

> 2. The employer maintains a progressive discipline policy, under which the employer will issue an employee a verbal warning, a written warning, a one-day suspension and a two-day suspension prior to discharge.
>
> 3. Prior to November 7, 2016, the employer issued the claimant progressive discipline, including a verbal warning, a written warning, a one-day suspension and a two-day suspension.

5

4. The employer maintains a policy prohibiting drivers from deviating from their assigned route.

5. *The claimant knew of the employer's policy prohibiting drivers from deviating from their assigned route.*

6. The employer directed its route three drivers to follow a detour, which excluded the drivers from using Pennsylvania Route 65.

7. *The claimant knew of the route three detour directive.*

8. On October 24, 2016 and October 25, 2016, the claimant was driving route three but did not follow the route three detour; rather the claimant used Pennsylvania Route 65.

9. The employer began an investigation into the claimant's actions.

10. On November 7, 2016, the employer discharged the claimant for, among other reasons, violating its policy prohibiting drivers from deviating from their assigned route by not following the route three detour when driving route three.

Findings of Fact, Nos. 2-10 (emphasis added). The Board also stated:

At the hearing, the employer credibly established it maintains a policy prohibiting drivers from deviating from their assigned route, of which the claimant was aware.

The employer further credibly established that it maintains a progressive discipline policy, under which the employer will issue an employee a verbal warning, a written warning, a one-day suspension, and a two-day suspension prior to discharge. Also, the employer credibly established that, prior to November 7, 2016, the employer issued the claimant progressive discipline, including a verbal warning, a written warning, a one-day suspension, and a two-day suspension.

6

Finally, the employer credibly established that it directed its route three drivers to follow a detour, which excluded the drivers from using Pennsylvania Route 65. When applying for benefits, the claimant admitted to the Department that he was aware of the directive. The employer credibly established that on October 24, 2016, and October 25, 2016, the claimant was driving route three but did not follow the route three detour; rather the claimant used Pennsylvania Route 65.

The claimant testified that the employer's dispatcher informed the claimant that Pennsylvania Route 65, which was previously closed for construction, was reopened. However, the claimant did not credibly establish that he was given permission to ignore the route three detour directive and instead use Pennsylvania Route 65.

After considering the record, the Board concludes the employer credibly established the claimant violated its policy prohibiting drivers from deviating from their assigned route. *The claimant did not credibly establish good cause for his violation, or alternatively, that the policy was unreasonable*. Therefore, the Board concludes the claimant committed willful misconduct and is thus ineligible for benefits under Section 402(e) of the Law.

Board's decision at 2-3 (emphasis added). The Board declined to address the altercation on October 21, 2016, noting that a claimant who is discharged for multiple reasons is ineligible for compensation if one of those reasons is considered willful misconduct under Section 402(e) of the Law. *Anderson v. Unemployment Compensation Board of Review*, 485 A.2d 900, 902 (Pa. Cmwlth. 1985).

On appeal to this Court,[4] Claimant argues that: 1) the Board's determination of willful misconduct is not supported by substantial evidence because

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings are supported by substantial evidence. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

Employer failed to prove that Claimant's violation of the work rule was deliberate; and 2) Claimant's negligent conduct did not rise to the level of willful misconduct.[5]

The burden of proving willful misconduct rests with the employer. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Where the employer asserts willful misconduct based on the violation of a work rule, the employer bears the burden of establishing the existence of the work rule and its violation by the employee. *Id.* If the employer proves the existence of the rule, its reasonableness, and its violation by the employee, then the burden of proof shifts to the employee to prove that he had good cause for his actions. *Id.*

An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. *Chester Community Charter School v. Unemployment Compensation Board of Review*, 138 A.3d 50, 55 (Pa. Cmwlth. 2016). Therefore, a determination of whether an employee's actions amount to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's policy or directives. *Rebel v. Unemployment Compensation Appeal Board*, 723 A.2d 156, 158 (Pa. 1998); *Eshbach v. Unemployment Compensation Board of Review*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004). Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. 855 A.2d at 948.

---

[5] While the Law does not define the term "willful misconduct," our courts have defined it as including: (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules; (3) the disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 606 (Pa. Cmwlth. 2011).

In addition, it is well settled that the Board is the ultimate factfinder in unemployment compensation proceedings. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385 (Pa. 1985); *Chapman*, 20 A.3d at 607; *Chamoun v. Unemployment Compensation Board of Review*, 542 A.2d 207, 208 (Pa. Cmwlth. 1988). Thus, issues of credibility are for the Board, and the Board may accept or reject a witness's testimony whether or not it is corroborated by other evidence of record. *Peak*; *Chamoun*. The Board's findings of fact are conclusive on appeal if the record, taken as a whole, contains substantial evidence to support them. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977). Finally, this Court must examine the evidence in the light most favorable to the party that prevailed before the Board and give that party the benefit of all inferences that can be logically and reasonably drawn from the evidence. *Chapman*, 20 A.3d at 607.

Relying on *Chester Community Charter School* and *Budget Maintenance v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 1873 C.D. 2009, filed March 22, 2010),[6] Claimant argues that the Board's determination of willful misconduct is not supported by the record because he was acting under a mistaken belief that he had permission to deviate from the detour.

In *Chester Community Charter School*, the employer's policy prohibited the falsification of records. The claimant's duties included reviewing employees' time cards to confirm that employees were working no more than 29 hours per week. The claimant sent her supervisor an email stating that certain employees had worked more than the maximum of 29 hours and that she had altered

---

[6] *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may . . . cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

the time cards for those employees regarding when they had clocked in or clocked out. Employer subsequently discharged the claimant for falsifying employee time cards in violation of its policy.

The local service center held that the claimant was ineligible for benefits under Section 402(e) of the Law, and she appealed. Before the referee, the claimant testified she believed the employer's policy only prohibited employees from altering their own time cards; she said she believed that the policy did not apply to her because she was working in payroll. The claimant noted that she initialed the alterations and said she had made such changes in the past. Two witnesses testified for the employer that the claimant had been told that changing time cards was not allowed.

The referee found the testimony of the employer's witnesses credible to establish that the employer had a policy prohibiting the falsification of documents, including time cards, and that the claimant was aware of the policy. However, the referee rejected their testimony that the claimant was specifically advised not to alter time cards. The referee accepted as credible the claimant's testimony that she misunderstood the time-keeping instructions she was given. The referee noted that the claimant initially disclosed her actions to her employer, she initialed the changes she made on the time cards, and she credibly testified that she was unaware that her conduct was contrary to the employer's policy. The referee concluded that the claimant's actions did not amount to willful misconduct rendering her ineligible for benefits. The Board affirmed, specifically citing the claimant's credible testimony.

In *Budget*, the claimant's duties included sorting equipment to be stored, disposed of, and redeployed within a building that was being closed down. He found several buckets of gas valves that had been placed in the trash. The facility

10

manager advised him that the valves could not be reused and that he should simply "scrap them." The claimant took the valves to a local recycling center, and he was discharged for violating the employer's policy prohibiting the removal of customer property from the worksite. The local service center determined that the claimant was not ineligible for benefits under Section 402(e) of the Law, and the employer appealed.

Before the referee, the claimant acknowledged that he removed the gas valves from the work site, but he stated that when the facility manager said that he should simply "scrap them," he believed he had permission to take the valves to the local recycling center. The claimant stated that he only later learned that he was supposed to scrap them through an authorized vendor. In concluding that the claimant's actions in *Budget* did not constitute willful misconduct, the Board accepted the claimant's testimony that he believed he had received permission from the facility manager to scrap the gas valves as credible.

Significantly, in *Chester Community Charter School*, the Board rejected the testimony of the employer's witnesses and credited the claimant's testimony that she was confused. In *Budget*, the Board accepted the claimant's testimony that he believed he had received permission from the facility manager to scrap the gas valves as credible. Here, in contrast, the Board accepted the testimony of Employer's witnesses and found that Claimant "did not credibly establish good cause for his violation." Board's decision at 3. Because the Board did not credit Claimant's testimony, his reliance on *Chester Community Charter School* and *Budget* is misplaced.

Furthermore, Claimant's assertion that he *reasonably* believed he had permission to change his route is not supported by the record. *See Eckenrode v.*

11

*Unemployment Compensation Board of Review*, 533 A.2d 833, 835 (Pa. Cmwlth. 1987) (holding that a claimant who was suspended for refusing to work at a different facility could have no reasonable belief that she could refuse an assignment while her grievance was pending, and, therefore, the claimant's second refusal to perform that work was willful misconduct). Claimant was aware that Employer's policy prohibited deviation from the assigned routes. He did not testify that the dispatcher told him to resume using Route 65 or that he could disregard the detour. In fact, Claimant acknowledged that Employer's management had not yet confirmed that Route 65 was open. N.T. at 26. Claimant deviated from the detour before Employer posted notice of the change. Under these circumstances, Claimant could not reasonably have believed he had permission to do so, and his deviation from the detour constituted willful misconduct. *Id.*

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Halloran,                          :
                                         :
                    Petitioner           :
                                         :
            v.                           : No. 1078 C.D. 2017
                                         :
Unemployment Compensation                :
Board of Review,                         :
                                         :
                    Respondent           :

# O R D E R

AND NOW, this 4th day of June, 2018, the order of the Unemployment Compensation Board of Review, dated June 7, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge