# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny Orphans' Court/ : <br>
Fifth Judicial District of Pennsylvania, : <br>
          Petitioner : <br>
           : <br>
          v. :    No. 1534 C.D. 2018 <br>
           :    Argued: October 3, 2019 <br>
Unemployment Compensation : <br>
Board of Review, : <br>
          Respondent :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge <br>
               HONORABLE CHRISTINE FIZZANO CANNON, Judge <br>
               HONORABLE ROBERT SIMPSON, Senior Judge

**OPINION** <br>
**BY SENIOR JUDGE SIMPSON**       **FILED: November 13, 2019**

The County of Allegheny Orphans' Court/Fifth Judicial District of Pennsylvania (Employer) petitions for review from an order of the Unemployment Compensation Board of Review (Board) that declined to find J.B. (Claimant) ineligible for unemployment compensation (UC) benefits under Section 402(e) of the UC Law.[1] Employer discharged Claimant from employment for violating the code of conduct for employees of the Unified Judicial System (UJS). Relevant here, Employer's primary witness, although subpoenaed, did not attend the hearing. After initially closing the record, and without a written request by any party, the referee conducted a second hearing to allow Employer's witness to testify. The Board concluded the referee erred in reopening the record on her own motion. Based on the evidence submitted during the first hearing, the Board determined Employer did not prove willful misconduct.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e) (relating to willful misconduct).

Employer argues the Board erred in not considering the testimony it submitted at the second hearing. Employer also contends that, regardless, it met its burden of proof. Because the Board did not err in determining the referee improperly reopened the record under the circumstances, and the record from the first hearing did not connect Claimant's alleged willful misconduct to her work, we affirm.

## I. Background

Since 1995, Claimant worked for Employer as a clerk of courts, presumably for the Allegheny County Orphans' Court. In that capacity, she was subject to the UJS Code of Conduct (Code), which requires UJS employees to avoid impropriety or the appearance of impropriety and to avoid misuse of influence or resources of the judiciary. See Code, Section VII, Workplace Conduct, B(iv); Reproduced Record (R.R.) at 96a-103a. The Code also placed a duty on UJS employees to disclose when there was a conflict of interest.

In January 2018, Employer learned Claimant had a relationship with an inmate in the Allegheny County jail (Inmate). In the course of that relationship, she hid Inmate's vehicle, ostensibly used in a crime, and hid the $80,000 it contained in her home. Claimant did not disclose her relationship with Inmate to her supervisors.

Employer investigated Claimant's involvement in Inmate's crimes after receiving a criminal complaint listing the charges against her. City of Pittsburgh Detective Joseph A. Lippert, III (Officer), who signed the criminal complaint, investigated the charges against Inmate and filed charges against Claimant for her

2

role in allegedly hiding ill-gotten gains and intimidating witnesses on Inmate's behalf.

Melinda Sala, Employer's Human Resources Manager (HR Manager) held a meeting with Claimant to discuss her role in Inmate's crimes. During that meeting, Claimant admitted to having a relationship with Inmate and to hiding his vehicle and the $80,000 it contained in her home. Based on these admissions, Employer suspended Claimant from her employment. Subsequently, Employer terminated Claimant's employment for violations of the Code.

Claimant applied for UC benefits, which the local service center granted when Employer failed to respond to a questionnaire. Employer appealed, and shortly thereafter, a referee scheduled a hearing.

Relevant here, Employer subpoenaed Officer to attend the referee's hearing, and to testify regarding Claimant's role in Inmate's crimes.

At the hearing, Employer presented the testimony of HR Manager. Despite the subpoena, Officer did not appear, and no reason was given for his non-appearance. Nonetheless, Employer did not request a continuance, and the referee held the hearing (First Hearing). Employer attempted to submit a copy of the preliminary hearing transcript from the criminal proceeding involving Inmate. However, Claimant's counsel objected on hearsay grounds, and the referee excluded the transcript on that basis. Employer also submitted a copy of the criminal complaint filed against Claimant, the criminal docket, and a copy of the UJS Code.

3

HR Manager testified regarding Claimant's violations of the Code. Specifically, she testified Section IV(A) of the Code prohibits UJS employees from accepting anything of value from a person. Referee's Hr'g, Notes of Testimony (N.T.), 4/18/18, at 9; R.R. at 79a. She noted the strict standards to which UJS employees are held, emphasizing they should not appear to be influenced by others in the course of their official conduct, as by having relationships with and communicating with inmates. HR Manager also testified that Claimant admitted to hiding Inmate's vehicle and his $80,000.

Other than answering the referee's basic questions regarding her title and her dates of employment, Claimant declined to testify at the hearing, citing the pending criminal charges against her and the privilege against self-incrimination. She did not submit any other evidence.

Two days after closing the record at the hearing, the referee contacted Employer and advised that she was reopening the record to hold a second hearing in order to hear Officer's testimony. Employer again subpoenaed Officer to appear.

At the outset of the second hearing, Claimant's counsel objected to the reopening of the proceedings without a request by any party. The referee responded that she continued the hearing because "Officer was subpoenaed[,] and he did not appear at the prior hearing." Referee's Hr'g, 5/9/18, N.T. at 2 (Second Hearing). When Claimant's counsel asked the referee about the grounds for reopening, the referee advised that she acted on the advice of her supervisor who works for the Department of Labor and Industry (Department), who she identified as a party to the

4

proceedings. N.T. at 4. She confirmed that "I [referee] reopened it … [a]t the request of my supervisor …." Id.

The referee reopened the hearing for the sole purpose of receiving Officer's testimony. Over Claimant's objection, Officer testified regarding his investigation of Claimant's conduct as related to Inmate, in particular, his review of 80-plus jail calls between Claimant and Inmate. As much of his testimony was hearsay, the referee admitted little of Officer's testimony. Officer confirmed he could identify the voice on the calls as Claimant's voice because he spoke with her when he executed a search warrant at her home. Thus, the referee limited Officer's testimony to only what he heard Claimant say on the calls.

Officer testified that when asked by an unknown male to retrieve Inmate's vehicle, which contained a lot of cash, Claimant agreed. She assured Inmate she would hide the vehicle, knowing it contained stolen items. She advised "[Inmate] that she was going to pull every string she had. She was going to reach out to people that she knew within the criminal justice system" which included a judge and his tip staff. N.T. at 12 (Second Hearing). Officer testified he heard Claimant contact Inmate's family, who were victims of his crimes. Officer also testified Claimant stated Inmate's wife "needed to be put in cement shoes and sunk in the river …." Id. at 15. Officer did not complete an investigation of Claimant's communications with other court staff because he was told to "back off." Id. at 17. Officer confirmed the dismissal of the criminal charges against Claimant.

5

Based on the evidence of the second hearing, the referee found that Claimant contacted the victims of Inmate, which was a misuse of her position. She found Claimant repeatedly conversed with Inmate, which was a conflict of interest. She also found Claimant made threatening remarks about Inmate's wife. Based on these findings, the referee concluded Claimant committed willful misconduct, and so was ineligible for UC benefits under Section 402(e) of the UC Law.

Claimant appealed to the Board, arguing the referee abused her discretion in reopening the record without a request by any party. The Board agreed. Based on the record developed at the first hearing alone, it determined that Employer failed to meet its burden of proving willful misconduct. As a result, the Board found Claimant eligible for UC benefits. Employer petitioned for review to this Court.

After briefing and argument, the appeal[2] is ready for disposition.

## II. Discussion

Employer argues that the Board erred in concluding the referee exceeded the scope of her authority when she reopened the record and relied upon Officer's testimony from the second hearing. Employer also asserts that, notwithstanding the Board's decision limiting the record to evidence admitted during the first hearing, Employer established that Claimant violated the UJS Code.

---

[2] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. Dep't of Corr. v. Unemployment Comp. Bd. of Review, 943 A.2d 1011 (Pa. Cmwlth. 2008). As to matters of law, our review is plenary. Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Review, 983 A.2d 1231 (Pa. 2009).

The Board responds that its regulation, 34 Pa. Code §101.24, permits reopening the record only on a request from a party. It further maintains that Employer did not submit sufficient evidence to establish Claimant's violation of the Code, or that her actions constituted willful misconduct.

Before addressing the merits, we consider the parties' contentions regarding the proper content of the evidentiary record.

### A. Reopening the Record

The legal question before us is whether the referee had the discretion to *sua sponte* reopen the hearing, after closing it, in order to hold a second hearing to receive Officer's testimony. The parties focus on the Department's regulation, 34 Pa. Code §101.24, which allows a *party* to request reopening of the record. Specifically, it provides in pertinent part:

> (a) If <u>a party who did not attend</u> a scheduled hearing <u>subsequently gives written notice</u>, which is received by the tribunal prior to the release of a decision, <u>and</u> it is determined by the tribunal that <u>his failure to attend the hearing was for reasons which constitute ''proper cause,''</u> the case shall be reopened. Requests for reopening, whether made to the referee or Board, shall be in writing; shall give the reasons believed to constitute ''proper cause'' for not appearing ….

34 Pa. Code §101.24(a) (emphasis added). The regulation limits the requests for reopening a record to a *party*. Section 101.22 defines a "party" as: "The Department, the claimant, the last employer of the claimant and another employer affected by the appeal proceedings." 34 Pa. Code §101.1 (definitions). A referee is defined as "of the Board," and the Board is defined separately from the Department. See id.

7

Notably, the regulation does not confer authority on a *referee* to reopen the record to accept additional evidence on her own motion. Employer argues that because the UC Law and the regulations do not preclude a referee from accepting additional evidence after closing the record, she was allowed to do so. We disagree.

Agencies and their agents have only those powers that are conferred on them by the legislature in their enabling statute or authorized regulations. Campo v. State Real Estate Comm'n, 723 A.2d 260 (Pa. Cmwlth. 1998); see Feingold v. Bell of Pa., 383 A.2d 791 (Pa. 1977). Here, the authority to reopen the record and further develop the evidence in the interest of justice is not afforded to a referee.

Although Employer urges that a referee may use her discretion to reopen the record, the referee is not the ultimate fact-finder to whom discretion in developing an adequate record may be implied. Rather, the Board is the ultimate fact-finder in UC determinations. Serrano v. Unemployment Comp. Bd. of Review, 149 A.3d 435 (Pa. Cmwlth. 2016). As the ultimate fact-finder, the Board arguably may reopen the record in its discretion, to ensure sufficient facts are developed to permit adequate appellate review. Cf. Cannady v. Unemployment Comp. Bd. of Review, 487 A.2d 1028, 1030 (Pa. Cmwlth. 1985) ("the decision to grant or deny a request to reopen a hearing is within the Board's discretion").

Here, the Board determined the referee lacked the authority to reopen the record on her own motion, as 34 Pa. Code §101.24 limits reopening of the record to requests by a party. The referee, contrary to her characterization, is not a party. See 34 Pa. Code §101.2.

The Board's construction of the pertinent regulation is consistent with its plain language. Regardless, to the extent the regulation was ambiguous, the Board's construction of the regulation is entitled to deference. Winslow-Quattlebaum v. Maryland Ins. Grp., 752 A.2d 878 (Pa. 2000).

Moreover, in this case, the record lacks evidence of the reason for Officer's failure to appear at the first hearing. In the course of his testimony, Employer did not elicit any facts regarding Officer's failure to appear at the first hearing in order to create a record showing proper cause for reopening. See Ortiz v. Unemployment Comp. Bd. of Review, 481 A.2d 1383 (Pa. Cmwlth. 1984) (if no proper cause for reopening the record, the Board must address the merits based on the record before the referee). "In order to reopen the record to allow an absent party to present evidence, that party must file a written request to the Board to reopen, and must present proper cause for not appearing before the referee." Budget Maint., Inc. v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1337 C.D. 2011, filed March 7, 2012), slip op. at 4, 2012 WL 8682332, at *2 (unreported).[3]

Accordingly, the Board did not err in limiting the record to evidence admitted during the first hearing. Ortiz. We next consider whether Employer met its burden of proving Claimant committed willful misconduct.

**B. Willful Misconduct**

Under Section 402(e) of the UC Law, a claimant is ineligible for UC benefits when an employer discharges her for willful misconduct related to her work.

---

[3] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

"Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." Reading Area Water Auth. v. Unemployment Comp. Bd. of Review, 137 A.3d 658, 661 (Pa. Cmwlth. 2016).

Although the statute does not define "willful misconduct," case law defines willful misconduct as: (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect; or (d) negligence indicating an intentional or substantial disregard of an employer's interest or an employee's duties or obligations. Oyetayo v. Unemployment Comp. Bd. of Review. 110 A.3d 1117 (Pa. Cmwlth. 2015). Deliberate violation of an employer's reasonable policy may constitute willful misconduct. Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603 (Pa. Cmwlth. 2011). However, the employer must first prove the existence of the rule and the claimant's knowledge and violation of the rule. Halloran v. Unemployment Comp. Bd. of Review, 188 A.3d 592 (Pa. Cmwlth. 2018). If the employer satisfies its burden of proof, the burden shifts to the claimant to prove she had good cause for her actions, i.e., they were justified or reasonable under the circumstances. Kelly v. Unemployment Comp. Bd. of Review, 747 A.2d 436 (Pa. Cmwlth. 2000).

Here, the work rule at issue is the Code, to which all UJS employees are subject. The specific violations are impropriety, the appearance of impropriety, the appearance of using her office or influence with the court improperly, acceptance of anything of value from any person, and engaging in "personal activities that may

10

detract from the impartiality of the judiciary …." See Code, VI(E); R.R. at 101a. Claimant also did not report her relationship with Inmate to her supervisors.

There is no dispute that Claimant was aware of and subject to the Code. Confined to the evidence admitted at the first hearing,[4] the issue is whether Employer established that Claimant violated the Code, which rose to the level of willful misconduct.

In addition to a copy of the Code, Employer submitted the following: the criminal complaint received in January 2018, stating the pending charges against Claimant; a letter from HR Manager to Claimant citing the criminal charges and suspending her pending an investigation of her violations of the Code; and the criminal docket in the case filed against Claimant in March 2018. The referee admitted the criminal complaint for the fact of its filing against Claimant, but excluded the affidavit of probable cause as hearsay. HR Manager was the only witness at the first hearing.

HR Manager explained she received a copy of the criminal charges against Claimant through the court's internal system. She reviewed a copy of the criminal complaint before meeting with Claimant regarding any Code violations.

---

[4] During argument before this Court, Employer complained about the exclusion of the preliminary hearing transcript of the criminal proceeding from admission at the first hearing, which the referee properly excluded as hearsay. As objected-to hearsay, the transcript was not competent evidence capable of supporting the Board's findings. See Walker v. Unemployment Comp. Bd. of Review, 367 A.2d 366 (Pa. Cmwlth. 1976).

11

HR Manager testified that the only pending charges at the time of the hearing were intimidation of a witness or victim and conspiracy to intimidate a witness or victim.[5]  N.T. at 13 (First Hearing); R.R. at 83a.  She testified that "<u>at that time, [Claimant] had indicated that she had hid [Inmate's] car and the cash in the spare room in her home</u>."  N.T. at 14; R.R. at 84a.  HR Manager clarified Claimant stated in their meeting that "she hid the car and [the car] contained $80,000 in cash."  N.T. at 15; R.R. at 85a.  It was clear that Claimant frequently communicated with Inmate who was incarcerated in the Allegheny County jail.  HR Manager testified that based on Claimant's admissions – to hiding the vehicle and $80,000 in cash for Inmate – while Inmate was still in the County jail, established "there's an impropriety" on Claimant's part.  <u>Id.</u>

HR Manager also testified to the various provisions of the Code that Claimant violated.  In addition to the Introduction,[6] she cited the following Sections of the Code: IV(A) (conflicts of interest); IV(C) (special treatment); IV(E) (misuse of position); VI(A) (accepting gifts of value); VI(C) (using influence or having the appearance of being influenced as to official conduct); VII(B) "Workplace Conduct," (iv) (impropriety or appearance of impropriety), (vi) (harassment), (vii) (threat of violence).  N.T. at 9-10; R.R. at 79a-80a.  HR Manager testified that she placed a checkmark next to each part of the UJS Code that Claimant violated based on her actions underlying the criminal charges.  <u>See</u> R.R. at 96a-106a.

---

[5] As of the first hearing, all theft-related/receipt of stolen goods charges were dismissed.

[6] The Introduction stated that UJS employees are trustworthy and held to the highest standards to preserve the integrity of the Courts they serve.  <u>See</u> Reproduced Record at 77a.

12

It is noteworthy that the Board cites only the UJS Code provisions regarding a "high degree of professionalism" and misusing influence or being influenced in official conduct. See Resp't's Br. at 11. However, these are not the only provisions HR Manager cited in her testimony, or that Employer alleged in its petition for review. N.T. at 15; R.R. at 85a ("there's an impropriety"); see Pet. for Review, ¶26. Rather, Employer emphasized the impropriety and the appearance of impropriety based on Claimant's admissions as to her actions on behalf of Inmate, who was currently housed in the County jail on pending abuse charges.

Evidence substantiating Claimant's activities is undisputed; Claimant did not testify on her own behalf, and Employer's evidence substantiates that Claimant was charged with crimes related to her admitted assistance to Inmate. However, that the record supports Claimant's violation of a work rule does not end the inquiry into whether Claimant committed willful misconduct.

Relevant to our analysis, Section 402(e) of the UC Law provides that a claimant is ineligible for UC benefits when "his unemployment is due to his discharge … from work for willful misconduct [is] *connected with his work*." 43 P.S. §802(e) (italics added). See Cty. of Allegheny v. Unemployment Comp. Bd. of Review, 210 A.3d 1140 (Pa. Cmwlth. 2019) (holding claimant's driving under the influence (DUI) conviction did not disqualify him from benefits because it was unconnected to his work). An employer may appropriately discharge an employee for misconduct for violating a work rule, and yet the violation may not rise to the level of willful misconduct so as to disqualify him from receiving UC benefits. Id.; Palladino v. Unemployment Comp. Bd. of Review, 81 A.3d 1096, 1101 (Pa. Cmwlth. 2013)

("off-duty behavior that is merely 'unacceptable to an employer does not necessarily equate to' willful misconduct under Section 402(e) of [the UC] Law").

As we recently held in a case involving the same Employer when it discharged an employee for a DUI conviction: "<u>There must be an aspect of the conduct that renders it work-related</u>. The violation of a work rule does not, by itself, establish that the conduct was work-related." <u>Cty. of Allegheny</u>, 210 A.3d at 1143. As in that case: "There is nothing in the record before this Court to indicate that the violation of the work rule or the [alleged criminal activity] that was the cause for Claimant's discharge were work-related." <u>Id.</u> Further, there is no evidence that the misconduct affected Claimant's ability to perform her job, so as to connect her off-duty conduct to her work. <u>Palladino</u>.

Evidence of the connection between Claimant's Code violations and her work is lacking here. Therefore, we conclude her actions did not constitute disqualifying willful misconduct as a matter of law. <u>Reading Area Water Auth.</u> Accordingly, the Board did not err in determining Employer did not prove willful misconduct under Section 402(e) of the UC Law, and in deeming Claimant not ineligible for UC benefits on that basis.

## III. Conclusion

For the foregoing reasons, the Board's order is affirmed.

_____
ROBERT SIMPSON, Senior Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny Orphans' Court/ :
Fifth Judicial District of Pennsylvania, :
                 Petitioner :
                  :
          v. : No. 1534 C.D. 2018
                  :
Unemployment Compensation :
Board of Review, :
              Respondent :

## **O R D E R**

**AND NOW**, this 13th day of November 2019, the order of the

Unemployment Compensation Board of Review is **AFFIRMED**.

_____
ROBERT SIMPSON, Senior Judge