## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media School District, : 
               Petitioner : 
                   : 
        v. : 
                   : 
Unemployment Compensation : 
Board of Review, :   No. 63 C.D. 2021
            Respondent :   Argued: June 22, 2022


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge


OPINION BY
JUDGE COVEY                         FILED: August 8, 2022


Rose Tree Media School District (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) December 30, 2020 order affirming the Referee's decision that found Catherine C. Hall (Claimant) eligible for UC benefits under Section 402.1 of the UC Law (Law)[1] and reversed the Altoona UC Service Center's determination that found Claimant ineligible for UC benefits and assessed a fault overpayment under Section 804(a) of the Law.[2] The issue before this Court is whether Claimant is a year-round employee under Section 402.1 of the Law.[3]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1 (relating to benefits based on service for educational institutions).

[2] 43 P.S. § 874(a) (relating to repayment of unwarranted UC benefits).

[3] Employer includes two additional issues: (1) whether Section 402.1 of the Law prohibits Claimant from receiving UC benefits; and (2) whether *Scotland School for Veterans' Children v. Unemployment Compensation Board of Review*, 578 A.2d 78 (Pa. Cmwlth. 1990), is contrary to

**Facts**

On December 6, 2001, Employer hired Claimant as a full-time bus driver. For the past several years, Claimant has worked for Employer during the summer as a bus driver. However, due to the COVID-19 pandemic, Employer had no bus driver work available during the summer of 2020. On or about May 26, 2020, Employer notified Claimant that she would have a position as a bus driver during the 2020-2021 school year. Employer paid Claimant income through claim week ending June 27, 2020.

On June 21, 2020, Claimant applied for UC benefits. Claimant received $3,472.00 in UC benefits for claim weeks July 4, 2020 through August 15, 2020. On August 21, 2020, the UC Service Center issued a Notice of Determination (Determination) finding that Claimant was ineligible for UC benefits under Section 402.1 of the Law. The Determination stated that Claimant's unemployment commenced during the period between successive academic years and that Employer provided a bona fide offer of work for the next academic year. The UC Service Center also mailed Claimant a Notice of Fault Overpayment (Notice), stating therein that Claimant was overpaid $3,472.00 because she was ineligible to receive UC benefits between two successive academic years.

On September 3, 2020, Claimant appealed from the Determination and the Notice, arguing that she was entitled to UC benefits because she regularly worked for Employer in the summer, but she was denied summer work in 2020. A Referee held a hearing on September 29, 2020. On October 5, 2020, the Referee reversed the UC Service Center's Determination and the fault overpayment

Section 402.1 of the Law. *See* Employer Br. at 4. However, those issues are encompassed in the discussion of the stated issue.

assessment. Employer appealed to the UCBR. The UCBR affirmed the Referee's decision. Employer appealed to this Court.[4, 5]

### Discussion

Employer argues that the UCBR erred by basing its decision solely on the fact that Claimant had worked for Employer during previous summers, when Employer gave Claimant reasonable assurance of employment for the following academic year. Employer contends that the UCBR ignored the plain language of Section 402.1 of the Law, prior decisions of this Court, and the undisputed record facts. Employer emphasizes that Claimant is a 10-month employee whose work year is delineated by the terms of a Collective Bargaining Agreement (CBA). Employer declares that the fact that Employer has made work available during the summer months in the past, for which employees can volunteer, but are not required to volunteer, does not make Claimant a year-round employee. The UCBR rejoins that Section 402.1 of the Law does not apply to Claimant because she is a non-professional employee of a school who regularly worked over the summer for at least the past five years. The UCBR cites *Scotland School for Veterans' Children v. Unemployment Compensation Board of Review*, 578 A.2d 78 (Pa. Cmwlth. 1990), to support its position.

---

[4] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

[5] Claimant intervened and filed a brief with this Court. Pennsylvania School Boards Association Insurance Trust and Pennsylvania School Boards Association filed an *amici curiae* brief with this Court in support of Employer's position.

Initially, Section 402.1 of the Law provides, in relevant part:

**Benefits based on service for educational institutions** . . . **shall** as hereinafter provided **be payable** . . . ; **except** that:

. . . .

(2) With respect to services performed after October 31, 1983, in any other capacity [than an instructional, research, or principal administrative capacity] for an educational institution, benefits shall not be paid on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms **if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms** [(**reasonable assurance doctrine**)].

43 P.S. § 802.1 (emphasis added).

In *Scotland School*, this Court held that, because a "[non-]instructional, research, or principal administrative capacity" school employee, i.e., a house parent, had regularly worked in the summer as a house parent for the last two years, the reasonable assurance doctrine did not apply. 43 P.S. § 802.1(1). Specifically, the *Scotland School* Court held: "The evidence of regular (though not full-time) summer scheduling[] supports the finding that she was not an employee of the academic year but was employed year[ ]round, and obviates any further discussion on the 'reasonable assurance' doctrine of Section 402.1(2) [of the Law]." *Scotland Sch.*, 578 A.2d at 79.

Here, Claimant has worked as a bus driver for Employer since 2001. For at least the last five years, Claimant has volunteered and worked the summer months as a bus driver. If this Court was to follow *Scotland School*, the evidence of Claimant's regular summer work would support the UCBR's finding that Claimant

4

was a year-round employee, thus obviating any further discussion on the reasonable assurance doctrine of Section 402.1(2) of the Law.[6] *See Scotland Sch.* However, because Claimant received reasonable assurance that she would return to work the following school year, such a ruling would be in clear contradiction of the reasonable assurance doctrine codified in Section 402.1(2) of the Law and this Court's precedent.

In *Prunty v. Unemployment Compensation Board of Review*, 253 A.3d 349 (Pa. Cmwlth. 2021), this Court recently ruled that a part-time adjunct faculty member whose employer provided a bona fide offer of work for the next academic year was ineligible for UC benefits under Section 402.1(1) of the Law for the period covering a community college's summer academic session. Therein, the employer required part-time adjunct professors and instructors who desired to work during the summer to submit summer availability forms. The claimant submitted her availability form, wherein she stated she was available to teach any course in her department during both of the summer 2019 sessions. In various summer terms before 2019, including 2018, the employer had sufficient student enrollment, and few available full-time faculty to teach, thereby giving the claimant the ability to bid on and receive more than one course to teach.[7] The claimant did not dispute that she received a reasonable assurance that she would be working in the employer's 2019 fall semester. Rather, she argued that the employer's 2019 summer sessions were not during the period between two successive academic years, or during a similar period between two regular terms because the summer term is part of the academic year, not between two successive academic years, and because the summer term is a regular term, not a term *between* two regular terms.

---

[6] This Court notes that in the instant case, Employer did not regularly schedule Claimant for summer work. Rather, Claimant volunteered for said summer work.

[7] The claimant did not teach during either summer session in 2012.

5

The *Prunty* Court concluded that the employer's summer term was not a regular term under Section 402.1(1) of the Law and held:

> "Our General Assembly saw fit to disqualify school employees from receiving benefits during summer and other term breaks. It is settled law that teachers **and other school employees** not working during term breaks who can reasonably expect to return are not entitled to [UC] benefits." [*Scotland Sch.*], . . . 578 A.2d [at 79] . . . (citation omitted).

*Prunty*, 253 A.3d at 357 (emphasis added). Similarly, here, Claimant performed services for an educational institution that gave Claimant reasonable assurance that she would return to work the following school year. The fact that Claimant chose to voluntarily sign-up for summer work does not make her a year-round employee.[8] Accordingly, Claimant is disqualified from receiving UC benefits under Section 402.1(2) of the Law.[9]

Notwithstanding, Claimant argues that educational institutions, like Employer, are not entitled to a special set of rules where they can employ individuals for entire calendar years, but not pay UC benefits when those employees become unemployed through no fault of their own. Claimant further contends that the intent of Section 402.1(2) of the Law is to disqualify support employees of educational institutions that traditionally work only the weeks between the fall and spring from receiving UC benefits during the subsequent summer and other breaks when such

---

[8] To the extent that *Scotland School* holds otherwise, it is overruled.

[9] The Dissent contends that *Prunty* does not apply because the claimant therein was an adjunct professor and *Scotland School* was not raised before the *Prunty* Court. Although *Prunty* involved Section 402.1(1) of the Law, rather than Section 402.1(2) of the Law, both sections include the codification of the reasonable assurance doctrine. Further, in *Prunty*, the claimant argued "that the reasonable assurance doctrine does not apply herein because [the c]laimant worked for [the e]mployer year[ ]round," *Prunty*, 253 A.3d at 352, just as the claimant in *Scotland School* argued and Claimant herein. Accordingly, since *Prunty* ruled on the same issue, and is a recent *en banc* opinion, it is controlling herein.

6

work is not provided. Claimant maintains that it is not the intent of Section 402.1(2) of the Law to give educational institutions more rights than other employers.

> The Pennsylvania Supreme Court has instructed:

> The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute. In general, the best indication of legislative intent is the plain language of a statute.

> **When the words of a statute are clear and free from all ambiguity**, **the letter of it is not to be disregarded under the pretext of pursuing its spirit**. Words of the statute are to be construed according to their common and approved usage.

*Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1259 (Pa. 2020) (emphasis added) (quoting *Kistler v. State Ethics Comm'n*, 22 A.3d 223, 227 (Pa. 2011) (cleaned up)); *see generally* Sections 1903 and 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1903, 1921.

> Here, Employer's Human Resources' witness Thomas Haupert (Haupert) testified at the Referee hearing:

> [Employer's Representative Geoffrey Moomaw (Moomaw)] Now, going to the prior summer, [i.e., 2019,] was [] Claimant required to work during any of the prior summer?

> [Haupert] **Bus drivers and bus aides are not required to work**. **It's a voluntary sign-up**. If they're interested, they can sign-up for runs that take place in the summer.

> [Moomaw] When you say they sign-up, is this literally like, possibly, a sign-up sheet in the transportation office?

> [Haupert] Yes, according to our CBA, on June 1[st], the Director of Transportation must post a sheet of paper in the transportation office for people to sign-up for summer runs.

7

> [Moomaw]  Is there any punishment if [] Claimant refuses to sign-up for summer work?
>
> [Haupert]  Not at all, no.

Reproduced Record (R.R.) at 88a (emphasis added).

> Haupert expounded:
>
> [Moomaw]  You referenced [] Claimant's [CBA], does that [CBA] define [] **Claimant's work year**?
>
> [Haupert]  It does.
>
> [Moomaw]  And, what does it state?
>
> [Haupert]  It states **the third Thursday in August the work year begins**, **and runs**, **typically**, **through the end of the school year**, **which is**, **typically**, **the middle of June**.
>
> [Moomaw]  But, does it state the number of workdays within the school year?
>
> [Haupert]  Drivers – yes, drivers work up to almost 189 days, depending on the driver.  But, maximum 189 days for drivers.
>
> [Moomaw]  Does the [CBA] have a separate section referencing summer work and how it's done via the sign-up sheet?
>
> [Haupert]  It does, yes.

R.R. at 88a-89a (emphasis added).

The uncontested above-quoted testimony evidences that pursuant to the CBA, which governed Employer's and Claimant's employment relationship, Claimant worked from the third Thursday in August to the middle of June.  The fact that she *voluntarily* signed up for summer work does not change the fact that **she performed** "**services** [] after October 31, 1983, in any other capacity [than an instructional, research, or principal administrative capacity] **for an educational institution**," and **therefore UC**

8

**benefits shall not be paid** on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms **if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms**.

43 P.S. § 802.1(2) (emphasis added). The plain language of the statute mandates that Claimant is not entitled to UC benefits.

Nevertheless, Claimant asserts that the plain language of Section 402.1(2) of the Law supports the UCBR's conclusion. Claimant declares that Section 402.1(2) of the Law provides UC benefits to employees for unemployment during the weeks between "two regular terms," as long as the weeks are not between "two successive academic years or terms." 43 P.S. § 802.1(1)-(2). Claimant submits that she was unemployed during the period of Employer's *extended school year* (ESY) program when Employer's superintendent decided to cancel the program **in the summer** of 2020 due to the COVID-19 pandemic. Claimant posits that the ESY program, while not a "regular term[]," is an extension of the academic year and not *between* "two successive academic years or terms." *Id.* As such, Claimant maintains that she is entitled to UC benefits under the plain language of Section 402.1(2) of the Law.

At the Referee hearing, Claimant's counsel used *ESY* and *summer program* interchangeably. *See* R.R. at 91a ("[T]he decision not to run [the] ESY or summer program was a school district decision?"); *see also* R.R. at 92a ("[I]t's fair to say that [] Haupert's correct, that you worked ESY or summer programs for [Employer] . . . ?"). Further, Haupert testified that the work year begins the third Thursday in August, and runs through the end of the school year, which is, typically, the middle of June. *See* R.R. at 89a. The ESY/summer program, which Claimant voluntarily signed up to work, began after the middle of June and ended before the

9

third Thursday in August. *See* R.R. at 87a (The student year ended June 12, 2020; the summer program began thereafter.). Moreover, the UCBR found as a fact[10] that

> 1. [] Claimant works as a **full-time bus driver** for [Employer] where she earns $25.17 per hour; she has worked there since December 6, 2001.
>
> 2. For the past several years, [] [**C]laimant has worked during the summer** as a bus driver for [Employer], but there was **no bus driver work available during the summer** of 2020.

R.R. at 100a (emphasis added). The UCBR did not make any findings of fact concerning ESY or mention ESY in its decision. Accordingly, because the ESY/summer program is clearly and undisputedly "during a period between two successive academic years[,]" 43 P.S. § 802.1(2), and Claimant received reasonable assurance that she would return to work the following school year, Claimant is disqualified from receiving UC benefits under Section 402.1(2) of the Law.

## Conclusion

For all of the above reasons, the UCBR's order is reversed. Claimant is disqualified from receiving UC benefits under Section 402.1(2) of the Law, and Claimant shall repay the non-fault overpayment in accordance with Section 804(b)(1) of the Law.[11]

_____
ANNE E. COVEY, Judge

Judge Wallace did not participate in the decision in this case.

---

[10] The UCBR adopted the Referee's findings of fact and conclusions of law.

[11] 43 P.S. § 874(b)(1) (relating to recoupment of non-fault overpayment of benefits).

10

Rose Tree Media School District, : 
                    Petitioner : 
                    : 
        v. : 
                    : 
Unemployment Compensation : 
Board of Review, :    No. 63 C.D. 2021
                 Respondent : 

# O R D E R

AND NOW, this 8th day of August, 2022, the Unemployment Compensation Board of Review's December 30, 2020 order is reversed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media School District, :
                       Petitioner :
                                     :
          v. : No. 63 C.D. 2021
                                       : Argued: June 22, 2022
Unemployment Compensation :
Board of Review, :
                    Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge

DISSENTING OPINION
BY JUDGE DUMAS                         FILED: August 8, 2022

Respectfully, I dissent. In my view, Catherine C. Hall (Claimant) is entitled to benefits based on the substantial evidence accepted by the Unemployment Compensation Board of Review (Board), which established that Claimant is a year-round employee of the Rose Tree Media School District (Employer). Thus, she is not disqualified from receiving benefits as an employee otherwise subject to Section 402.1(2) of the Unemployment Compensation Law (Law)[1], but rather is entitled to the exception recognized by this Court in *Scotland School for Veterans' Children v. Unemployment Compensation Board of Review*, 578 A.2d 78 (Pa. Cmwlth. 1990) (*Scotland School*).

---

[1] Act of Dec. 5, 1937, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(2).

It is well-settled law that a teacher or other school employee is not eligible for unemployment compensation benefits during term breaks, provided the employee receives reasonable assurance that she will return to her position following the break.[2] 43 P.S. § 802.1; *DeLuca v. Unemployment Comp. Bd. of Rev.*, 459 A.2d 62 (Pa. Cmwlth. 1983). This is because such "employees are not truly unemployed or suffering from economic insecurity during scheduled recesses." *Haynes v. Unemployment Comp. Bd. of Rev.*, 442 A.2d 1232, 1233 (Pa. Cmwlth. 1982).

However, upon finding substantial evidence that an employee otherwise subject to Section 402.1(2) is in fact employed year-round, such evidence "*obviates* any further discussion on the 'reasonable assurance' doctrine[.]" *Scotland School*, 578 A.2d at 79 (emphasis added). Notably, the *Scotland School* panel affirmed an award of benefits notwithstanding the employer's assertion that it had given the claimant "reasonable assurance of returning to work" in the following term. *Id.* An exception to the doctrine of reasonable assurance could not be more clearly stated.

---

[2] Reasonable assurance is a term of art that has not been defined by the Law, but Section 65.161 of the regulations defines reasonable assurance:

(a) For purposes of section 402.1 of the law (43 P.S. § 802.1), a contract or reasonable assurance that an individual will perform services in the second academic period exists only if both of the following conditions are met:

(1) The educational institution or educational service agency provides a bona fide offer of employment for the second academic period to the individual.

(2) The economic terms and conditions of the employment offered to the individual for the second academic period are not substantially less than the terms and conditions of the individual's employment in the first academic period.

34 Pa. Code § 65.161(a).

As the majority observes, for at least five years preceding the summer of 2020, Claimant worked for Employer through the summer months. This is far longer than the two academic years and one intervening summer considered sufficient evidence of year-round employment in *Scotland School*. *See id.* at 81. Further, while Employer had given Claimant reasonable assurance that she would return to her position in the fall, the Board's finding of year-round employment rendered the assurance irrelevant to whether Claimant was entitled to benefits. *Id.* at 79.[3]

The majority also suggests that applying *Scotland School* would undermine other precedent of this Court. *See Rose Tree Media Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 63 C.D. 2021, filed August 8, 2022), slip op. at 5. Respectfully, I disagree. It is unclear to me why *Scotland School* is worthy of less precedential deference than other published decisions of this Court. Further, the singular case cited in support of the majority's assertion is readily distinguishable legally and factually. In *Prunty v. Unemployment Compensation Board of Review*, 253 A.3d 349 (Pa. Cmwlth. 2021), the issue before the *en banc* panel was whether the collegiate employer's summer term constituted a "regular term" based on the plain language of Section 402.1(1).[4]

---

[3] The majority places great importance on certain testimony from Employer describing Claimant's year-round employment as "voluntary." *See Rose Tree Media Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 63 C.D. 2021, filed August 8, 2022), slip op. at 7-9. In my view, Employer's description of Claimant's employment is rather facile and self-serving. Claimant did not volunteer her time but worked for wages. Thus, I reject Employer's description and note that the Board, whose role as the fact-finder is entitled to our deference, did not credit it. *See* Board's Decision & Order, 12/30/20 at 1-2 (unpaginated); *see also Halloran v. Unemployment Comp. Bd. of Rev.*, 188 A.3d 592, 597 (Pa. Cmwlth. 2018) ("The Board's findings of fact are conclusive on appeal if the record, taken as a whole, contains substantial evidence to support them.").

[4] Although similar, Section 402.1(1) applies to individuals employed "in an instructional, research, or principal administrative capacity for an educational institution[.]" 43 P.S. § 802.1(1).

The *en banc* panel concluded that the summer term was sufficiently distinguishable from the spring and fall academic terms, and, therefore, the claimant's prior part-time summer work was insufficient to establish year-round employment. *Prunty*, 253 A.3d at 357. Thus, the exception to the reasonable assurance doctrine recognized in *Scotland School* was not considered. Additionally, the *Prunty* claimant was a part-time, adjunct faculty member who argued that depriving part-time instructors of unemployment compensation benefits was unfair. *Id.* at 359. Here, of course, there is no question that Claimant was a full-time employee. Thus, in my view, the majority's reliance on *Prunty* is misplaced.[5]

In conclusion, Claimant established that she was a year-round employee with substantial evidence far stronger than that deemed sufficient by the *Scotland School* panel. Further, our decision therein remains precedential, and in the decades since, our General Assembly has offered neither an express repudiation nor more subtle criticism indicating that the exception to the reasonable assurance doctrine was ill conceived. For these reasons, I respectfully dissent.

_____
LORI A. DUMAS, Judge

President Judge Cohn Jubelirer joins in this dissent.

_____

[5] The majority maintains that *Prunty* is applicable because this Court rejected the *Prunty* claimant's assertion that she was a year-round employee. In my view, that is a mischaracterization of the analysis. In *Prunty*, this Court determined, *as a matter of law*, the collegiate employer's summer term did not constitute a "regular term" and, therefore, the claimant's prior, part-time work during the summer term did not establish year-round employment. *See Prunty*, 253 A.3d at 357. That is far different from the circumstances herein, where substantial evidence has established that Claimant was, *in fact*, a year-round employee. Thus, if it is the decision of this Court to overrule *Scotland School*, it should do so directly and not in reliance on this Court's decision in *Prunty*.